1

2

3

4

5

6

7

8

9                      UNITED STATES DISTRICT COURT

10                    EASTERN DISTRICT OF CALIFORNIA

11                         ----oo0oo----

12

13

14  KIRSTEN FISHER, ON BEHALF OF
    HERSELF AND AS GUARDIAN AD
15  LITEM FOR HER MINOR CHILDREN,
    HALEY FISHER, MCKENSEY FISHER-
16  MATHIS,

17          Plaintiff,              NO. CIV. S-05-771 FCD/DAD

18       v.                         MEMORANDUM AND ORDER

19  PLACER COUNTY, TRACY MAE
    ALVAREZ, ANTOINETTE FABELA,
20  KEVIN HENDERSON, DIANE ROSE,
    GREG GEISLER,
21

22          Defendant.

23                         ----oo0oo----

24       Plaintiff Kirsten Fisher ("Fisher"), on behalf of herself

25  and as guardian ad litem of her minor children, Haley Fisher and

26  McKensey Fisher-Mathis ("children")[1], has filed claims for

27  _____

28          [1]   Because some claims are asserted on behalf of the
    children, the court refers to Fisher and her children,
    collectively, as "plaintiffs."

1   violation of the Federal Civil Rights Act, 42 U.S.C. § 1983, and

2   state tort claims based on the removal of her children.[2]

3   Plaintiffs seek both monetary and injunctive relief.  Defendants

4   Placer County, Tracy Mae Alvarez[3], Antoinette Fabela, Kevin

5   Henderson, Diane Rose, and Greg Geisler (collectively

6   "defendants") now move to dismiss pursuant to Fed. R. Civ. P.

7   12(b)(6).[4]  Specifically, defendants contend that individual

8   defendants are entitled to absolute and/or qualified immunity

9   from liability for plaintiffs' federal civil rights claims and

10  statutory immunity from liability for the state law claims.  For

11  the reasons stated herein, defendants' motion to dismiss is

12  GRANTED in part and DENIED in part.

13                          **BACKGROUND**

14      On December 2, 2003, Dr. Mark Knoble, plaintiffs' family

15  doctor, contacted the Placer County Child Protective Services

16  Agency, Placer County ACCESS ("ACCESS"), to report that Fisher

17  was projecting mold-related health symptoms upon her children.[5]

18  Dr. Knoble requested that ACCESS investigate based on his concern

19  for Fisher and her children.

20      On January 15, 2004, defendant Tracy Mae Alvarez

21  ──────────────

22      [2]   Because oral argument will not be of material
    assistance, the court orders this matter submitted on the briefs.
23  E.D. Cal. L. R. 78-230(h).

24      [3]   The court GRANTS defendant Alvarez's motion to join in
    the motion to dismiss given that plaintiffs' opposition has
25  addressed defendant Alvarez's conduct in their papers.

26      [4]   Unless otherwise stated, further references to a "Rule"
    are to the Federal Rules of Civil Procedure.

27      [5]   Unless otherwise noted all background facts are based
28  upon the complaint.  Pursuant to Fed. R. Civ. P. 12(b)(6), all
    factual allegations from the complaint are taken as true.

                              2

("Alvarez"), a social worker for ACCESS, visited and interviewed
the children at school.  On January 19, 2004, Ms. Jacklyn
Nielsen, Fisher's mother, called ACCESS to report that her
daughter was delusional.[6]  A few days later, ACCESS personnel
received an anonymous call indicating that Fisher was suicidal.

On January 23, 2004, Alvarez filed a petition with the
Placer County Superior Court, Case No. JV 2625, requesting that
Fisher be detained and held for psychiatric evaluation pursuant
to California Welfare and Institutions Code section 5150, ("5150
Hold")[7] and that her minor children be removed from her custody.
The petition stated that Fisher was "unable to protect" her
children and unable to provide a "stable home environment" due to
her "delusional belief that she and the minors are suffering
toxic mold poisoning."  (Compl. at ¶ 17.)  Defendants believed
that the children were suffering "serious emotional damage"
because of Fisher's "delusions."  (Id.)  That day, the Superior
Court granted the 5150 Hold and issued orders allowing ACCESS
personnel to remove the children from the house.

Defendant Diane Rose ("Rose"), a social worker for ACCESS,
arrived at the home with police to remove the children and place
them in the care of ACCESS staff until placement with their

---

[6]   Plaintiffs allege that Ms. Nielsen has a history of
mental health problems.  There are no allegations, though, that
defendants had any knowledge of this.

[7]   5150 hold is short for California Welfare and
Institutions Code section 5150, titled the "Detention of Mentally
Disordered Persons for Evaluation and Treatment," which provides
for a 72-hour evaluation and treatment period for persons alleged
to meet the legal criteria of being a danger to themselves or
others or gravely disabled due to a mental disorder.

1  grandfather.  At that time, Rose told the children and other

2  family members present that the children would be with their

3  grandfather for "a long time."  (Compl. at ¶ 10.)

4      Also on January 23, 2004, Fisher was detained and taken to

5  Heritage Oaks Hospital.  While there, she was evaluated by Dr.

6  Leslie Hirschaut and diagnosed with "panic disorder without

7  agoraphobia" and "generalized anxiety disorder" without suicidal

8  tendencies.  (Compl. at ¶ 19.)  Dr. Hirschaut found that Fisher's

9  thoughts about mold "seem to [have] some appropriateness to it,

10 as well as some anxiety around it simultaneously," but she was

11 not "overtly delusional."  (Id.)

12     Following Fisher's release from the 5150 Hold, defendants

13 Antoinette Fabela ("Fabela") and Greg Geisler ("Geisler"), a

14 social worker and an investigator, respectively, with Placer

15 County, investigated the facts and circumstances of the

16 separation to determine how to continue with the dependency

17 proceedings.[8]

18     On April 14, 2004, Fabela requested and received from a

19 "judge in the county counsel" a "change in placement return home"

20 order allowing the children to return to the custody of Fisher,

21 contingent on Fisher signing a voluntary Unified Services Plan

22 ("USP").  The USP required, in relevant part, Fisher to: 1)

23 report to her landlord any signs of mold; 2) discontinue any

24 discussion of "mold issues" with the children; and 3) refrain

25 from discussing mold issues with adults in front of the children.

26

27         [8]    The complaint states that Geisler and Fabela work for
   "Placer County CSOC."  While the complaint does not specify, the
28 court presumes that CSOC is a Placer County agency.

                                    4

1  Fisher signed the USP and the children were returned to her

2  custody on April 14, 2004, two months and twenty-two days after

3  their removal.  (Compl. at ¶¶ 20-21.)

4      Additionally, at some unspecified time, Fabela told Fisher

5  to review her mold sickness issue with a suitable medical doctor,

6  and if the doctor told her she had no mold-related sickness that

7  she must "drop the subject."[9]  (Compl. at ¶ 8.)

8      On April 23, 2004, Fisher met with Douglas R. Haney, an

9  environmental health consultant regarding the USP, believing it

10  restricted her free speech, especially in light of the mold found

11  in her dwelling.  Mr. Haney called Fabela to discuss the

12  conditions of the USP, but she would not speak with him without

13  Fisher's permission.  Fabela then told Fisher that "[i]f you

14  choose to pursue this any further, you know what this will mean."

15  (Compl. at ¶¶ 21-22.)

16      On April 20, 2005, plaintiffs filed a complaint against

17  defendants for alleging federal civil rights violations and

18  asserting pendant state tort claims.  On May 23, 2005, defendants

19  filed the instant motion to dismiss.

20                          **STANDARD**

21      On a motion to dismiss, the allegations of the complaint

22  must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322

23  (1972).  The court is bound to give the plaintiff the benefit of

24  _____

25      [9]    Paragraph Eight of the complaint is ambiguous as to

26  when Fabela made the comments alleged therein.  In ruling on a
motion to dismiss, the court must give the plaintiff the benefit
of every reasonable inference.  <u>Retail Clerks Int'l Ass'n v.</u>

27  <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  For the purposes of
this motion, the court infers that Fabela's comments were made

28  after the USP was approved by the court and signed by plaintiff.

                                5

every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Int'l Ass'n v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. <u>See id.</u>

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957); <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

**ANALYSIS**

**I.  42 U.S.C. § 1983 Claims**

Plaintiffs assert claims under the Federal Civil Rights Act, 42 U.S.C. § 1983, "based on violations of their rights under the Fifth and Fourteenth Amendment to the U.S. Constitution, procedural and substantive due process clause, their rights under the First Amendment, Freedom of Speech, and their right of privacy and right of familial relationship as a mother and

1

2   children, all of which are rights protected under the Federal

3   Constitution."[10]   (Compl. at ¶ 23.)   Defendants contend that the

4   actions related to the removal of the children are shielded from

5   liability based on either absolute or qualified immunity.

6       **A.   Absolute Immunity**

7       It is well established that courts grant absolute immunity

8   from liability to those individuals whose functions are necessary

9   to the judicial process.   At early common law, this included such

10  individuals as judges, grand jurors, and prosecutors.   <u>Imbler v.</u>

11  <u>Pachtman</u>, 424 U.S. 409, 419, 424 (1976).   This doctrine has been

12  extended to the actions of other state actors when they engage in

13  functions that are quasi-prosecutorial or quasi-judicial.   <u>Kalina</u>

14  <u>v. Fletcher</u>, 522 U.S. 127 (1997) (citing <u>Forrester v. White</u>, 484

15  U.S. 219, 229 (1988)).   Specific to this case, the Ninth Circuit

16  has extended absolute immunity to social workers when they

17  perform functions similar to those of a prosecutor:

18          Although child services workers do not initiate criminal
            proceedings, their responsibility for bringing dependency
19          proceedings, and their responsibility to exercise
            independent judgment in determining when to bring such
20          proceedings, is not very different from the responsibility
            of a criminal prosecutor.   The social worker must make a
21          quick decision based on perhaps incomplete information as to
            whether to commence investigations and initiate proceedings
22          against parents who may have abused their children.   The
            social worker's independence, like that of a prosecutor,
23          would be compromised were the social worker constantly in
            fear that a mistake could result in a time-consuming and
24          financially devastating civil suit.

25  <u>Meyer v. Contra Costa County Dep't of Soc. Servs.</u> 812 F.2d 1154,

26

27          [10]   Because Fisher challenges conduct by state officials,
        only the Fourteenth Amendment Due Process Clause applies here.
28      <u>Tonawanda v. Lyon</u>, 181 U.S. 389 (1901); <u>Brown v. New Jersey</u>, 175
        U.S. 172 (1899).

7

1  1157 (9th Cir. 1987).

2       However, the touchstone of the absolute immunity analysis is
3  the function performed, not the title of the actor.  Miller v.
4  Gammie, 335 F.3d 889, 897 (9th Cir. 2003) (quoting Kalina, 522
5  U.S. at 127.  Thus, social workers are entitled to absolute
6  immunity only where they are performing functions "connected with
7  the initiation and pursuit of child dependency proceedings."
8  Meyers, 812 F.2d at 1157; Miller v. Gammie, 335 F.3d 889, 896
9  (9th Cir. 2003).  By contrast, when social workers' actions are
10 "neither . . . advocatory [nor] quasi-judicial [and do] not aid
11 [them] in the preparation or presentation of [the] case to the
12 juvenile court," they are not entitled to absolute immunity.
13 Meyer, 812 F.2d at 1157.  Courts applying this "functional"
14 approach have shielded activities including: preparing and filing
15 of the paperwork to obtain an order removing the children (Id. at
16 1156); presenting evidence or giving testimony at the custody
17 hearing (Id.; Lebbos, 348 F.3d 820, 825 (9th Cir. 2003)); and
18 investigating allegations of abuse or neglect to aid in the
19 preparation for the proceedings (Lebbos, 348 F.3d at 825).

20      The shield of absolute immunity protects even when
21 allegations against state actors include negligence, falsifying
22 evidence, abuse of discretion or bad faith during the initiation
23 and pursuit of dependency proceedings.  Lebbos, 348 F.3d at 826
24 (failure to investigate possible exculpatory evidence and
25 fabricated evidence); Mabe, 237 F.3d 1101, 1109 (9th Cir. 2001)
26 (social worker alleged to have improperly conducted the
27 investigation and falsified evidence in juvenile court
28 proceedings); Hennessey v. State of Wash., Dep't of Soc. & Health

1  Serv., 627 F. Supp. 137, 140 (E.D. Wash. 1985) (caseworker

2  allegedly divulged false and misleading information to county

3  prosecutor, prompting initiation of child dependency

4  proceedings); Pepper v. Alexander, 599 F. Supp. 523, 526-27

5  (D.N.M. 1984) (employees allegedly acted in bad faith in

6  instituting proceeding to deprive plaintiff of parental rights).

7  In the complaint, plaintiffs allege that various actions by

8  defendants violated their civil rights.  The court reviews the

9  alleged conduct by function to determine whether absolute

10  immunity applies.

11  **1.   Investigation and Initiation of Removal Proceedings**

12  Plaintiffs allege that actions taken by defendants Alvarez

13  and Henderson in the investigation and initiation of removal

14  proceedings violated their civil rights.[11]  It is well

15  established that actions taken in initiation and pursuit of child

16  _____

17  [11]   Specifically the complaint alleges:

18  Between 12-2003 and late 01-04, defendants took calls from
   Fisher's doctor, Fisher's mother, and an anonymous call each
19  indicating an increasing degree of mental health
   instability.  (Compl. at ¶¶ 12, 15-16.)
20
   On 01-15-2004, Ms. Tracy Mae Alvarez of Placer County ACCESS
21  visited Ms. Fisher's children's school unannounced and
   commenced to question the children about their mother's
22  alleged behavior.  (Compl. at ¶ 13.)

23  On 01-23-04, a petition filed with the Placer County
   Superior Court as Case No. JC2625 by ACCESS case worker, Ms.
24  Tracy Alvarez, stated that Ms. Kirsten Fisher as "Unable to
   protect" her children and unable to provide a "stable home
25  environment" due to her "delusional belief that she and the
   minors are suffering toxic mold poisoning.  (Compl. at ¶
26  17.)

27  Kevin Henderson orchestrated the entire W&I Code section
   5150 72 hour hold and was aware of and ratify [sic] all of
28  the related conduct of his subordinate Alvarez.  (Compl. at
   ¶ 9.)

1    dependency proceedings is absolutely immune.  <u>Meyers</u>, 812 F.2d at
2    1157.  Thus, all of defendants actions surrounding the
3    investigation into and initiation of the court's dependency
4    proceedings are shielded by absolute immunity.  <u>Lebbos</u>, 348 F.3d
5    at 826; <u>Meyer</u>, 812 F.2d at 1157.  This includes Alvarez's
6    activities requiring "independent judgment [necessary] in
7    determining when to bring about the proceedings."  <u>Meyers</u>, 812
8    F.2d at 1157.  Similarly, Henderson's approval and oversight of
9    Alvarez's conduct in initiating the court proceedings are
10   absolutely immune.  <u>Id.</u> at 1158.

11       **2.   Removal of the Children**

12       Plaintiffs allege that defendant Rose's removal of the
13   children from Fisher's custody violated their civil rights.
14   Additionally, plaintiffs allege that Rose's comments regarding
15   the length of time the children would be away from their home
16   violated their rights.[12]  Defendants contend that Rose's removal
17   of the Fisher children, based on a court order, and conduct
18   related to the removal is absolutely immune from liability.

19       There is case law which supports granting absolute immunity
20   for the execution of a court order.  <u>Coverdell v. Dep't. of Soc.</u>
21   <u>& Health Serv.</u>, 834 F. 2d 758 (9th Cir. 1987) (social worker
22   enjoys quasi-judicial immunity for executing a court's order);
23   <u>See also</u> <u>Caldwell v. LaFaver</u>, 928 F.2d 331 (9th Cir. 1991);
24   <u>Taylor v. Multnomah County Sheriff's Office</u>, 2004 U.S. Dist.

25   _____

26       [12]  Specifically the complaint alleges: Defendant Diane
     Rose, who arrived with police and detained Ms. Fisher's children,
27   telling Mr. Norman Fisher that the children would be with the
     county for a long time . . . [and] told co-plaintiffs that they
28   would have to be with their grandfather, Kirsten Fisher [sic]
     father, for a long time.  (Compl. ¶ 10.)

                                    10

1   LEXIS 18219 (D. Or. 2004) (sheriff entitled to quasi-judicial

2   immunity for faithfully executing a valid court order).

3       However, the Ninth Circuit recently narrowed the absolute

4   immunity doctrine, moving away from the test which immunized

5   actions taken in "connection with" or "incident to" ongoing child

6   dependency proceedings, and holding all immunity must derive from

7   a common law source.  Miller, 335 F.3d at 897.  Even actions

8   taken with court approval or under court's direction are not in

9   and of themselves entitled to quasi-judicial, absolute immunity.

10  Id. (quoting Antoine v. Byers & Anderson, 508 U.S. 429, 435-436

11  (1993)).  Since Miller, no published decision has addressed

12  whether a social worker's execution of a court order is entitled

13  to absolute immunity.[13]

14      Fortunately, the court need not resolve this open question

15  because the court finds, see infra, section II. B., that Rose is

16  entitled to qualified immunity for her conduct in removing the

17  children from their home.  See e.g, Gabbert v. Conn., 131 F. 3d

18  793 (9th Cir. 1997), reversed on other grounds, 526 U.S. 286

19  (1999) (not addressing absolute immunity where qualified immunity

20  exists).

21          **3.   Investigation and Preparation of Unified Services Plan**

22      Plaintiffs further allege that defendants Fabela and Geisler

23  violated their civil rights during their investigation into the

24  propriety of returning the children to Fisher's custody and their

25  preparation of the USP, by creating an unnecessarily lengthy

26

27      [13]   One post-Miller case extended absolute immunity to
28  activities surrounding court dependency proceedings, such as
    investigation.  Lebbos, 348 F.3d at 826.

separation from her children.[14]   Actions taken while in pursuit

of an outcome in dependency proceedings are shielded by absolute

immunity.  Meyer, 812 F.2d at 1157.  Further, investigations

aiding in the preparation of the court proceedings are absolutely

immune.  Lebbos, 348 F.3d at 826.

     After the initial removal of the children, Fabela and

Geisler continued to investigate Fisher's mental health status in

order to determine whether, and under what conditions, to reunite

her with her children.  Defendants evaluated the information

provided by the 5150 Hold report and drafted the USP with

parameters under which the court would approve the children being

returned to Fisher's custody.  Because these actions were taken

while in pursuit of an outcome to the dependency proceedings,

here return of the children, they are entitled to absolute

---

[14]   Specifically, the complaint alleges:

Antoinette Fabela investigated the facts and circumstances
of the separation of plaintiff Kirsten Fisher from her
children and concluded that Fisher was not delusional, and
yet still delayed in joining together Kirsten with her
children.  (Compl. at ¶ 8.)

Greg Geisler investigated of the circumstances regarding the
separation of Kirsten Fisher and her children, and
improperly without supporting evidence and in the face of
highly contradictory evidence, including medical reports,
concluded that Kirsten Fisher was delusional, thus causing
and prolonging the period of separation between plaintiff
and her children.  (Compl. at ¶ 11.)

On 04-14-04, social worker Antoinette Fabela requested a
"change in placement return home" if Kirsten Fisher would
sign a voluntary agreement.  (Compl. at ¶ 20.)

Two restrictions of the plan authored by Ms. Antoinette
Fabela on April 13, 2004, stated:  1) mother will maintain a
permanent residence, 2) Mother will report to the landlord
immediately for signs of mold, 3) Mother will discontinue
any topics of "mold issues" with minors.  And 4) "Mother
will refrain from any discussions of mold to other adults in
front of minors.  (Compl. at ¶ 21.)

12

immunity.

### 4.  Post Dependency Proceedings Activity

Finally, plaintiffs allege that, following completion of the dependency proceedings, Fabela violated Fisher's First Amendment right to free speech by making threatening comments regarding enforcement of the USP.[15]

As previously determined, the actions of preparing, gaining court approval, and executing the USP are shielded under absolute immunity because they occurred during the initiation and pursuit of the court's dependancy proceedings.  See supra, section I. A. 3.  Lebbos, 348 F.3d at 826.  However, the conduct plaintiffs challenge, namely Fabela's allegedly threatening comments to Fisher, occurred, after completion of the court proceedings and return of the children.  Defendants have not identified a common law basis for immunizing alleged threatening statements after the conclusion of dependency proceedings.  Antoine, 508 U.S. at 432 (official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question).

/ / /

---

[15]    Specifically the complaint alleges:

Antoinette Fabela . . . told Kirsten Fisher to review her mold sickness issued [sic] with a medical doctor, and told her that if a medical doctor says she has no mold related sickness, she must drop the subject of mold related sickness.  (Compl. at ¶ 8.)

[Plaintiff Fisher consulted an environmental consultant who disapproved of the terms of the USP.  With Ms. Fisher in the room, he telephoned Ms. Fabela to discuss the plan.  Ms Fabela refused to speak to Mr. Haney and, when Ms. Fisher was handed the phone,] Ms. Fabela clearly stated to Ms. Fisher "If you choose to pursue this any further, you know what this will mean!"  (Compl. at ¶ 22.)

1          **B.    Qualified Immunity**

2          The only allegations not shielded by absolute immunity are

3    Rose's activities surrounding the physical removal of Fisher's

4    children from her custody and all post-dependency proceeding

5    conduct by Fabela.  The doctrine of qualified immunity protects

6    from suit government officers who do not knowingly violate the

7    law.  Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).

8    Qualified immunity is a generous standard designed to protect

9    "all but the plainly incompetent or those who knowingly violate

10   the law."  Burns, 500 U.S. at 495 (1991) (citation omitted).

11         A qualified immunity analysis must begin with the "threshold

12   question: taken in the light most favorable to the party

13   asserting the injury, do the facts alleged show the [government

14   official's] conduct violated a constitutional right."  Saucier v.

15   Katz, 533 U.S. 194, 201 (2001).  If no constitutional violation

16   is shown, the inquiry ends.  Id.

17         Where the facts in the complaint allege a violation of a

18   constitutional right, an officer can establish a shield of

19   qualified immunity if: 1) the law governing the officer's conduct

20   was not *clearly established* at the time of the challenged actions

21   or 2) under the clearly established law, an officer could

22   *reasonably have believed* that the alleged *conduct was lawful*.

23   Lebbos, 348 F.3d at 826.  See Harlow v. Fitzgerald, 457 U.S. 800,

24   818 (1982) (observing that police officers "are shielded from

25   liability for civil damages insofar as their conduct does not

26   violate clearly established statutory or constitutional rights of

27   which a reasonable person would have known.")

28         Immunity exists even if a state actor's decision was

14

constitutionally deficient, so long as a defendant reasonably

misapprehends the law governing the circumstances confronted.

Brosseau v. Haugen, 125 S. Ct. 596, 599 (U.S. 2004).

Reasonableness is judged in "in light of the specific context of

the case, not as a broad general proposition." Id. "If the law

at the time did not clearly establish that the officer's conduct

would violate the Constitution, the officer should not be subject

to liability or . . . the burdens of litigation." Id.

### 1.   Removal of the Children

Plaintiffs allege that Rose's statements and actual physical

removal of the children from Fisher's custody violated their

civil rights.

As to the actual removal of the children, the court first

must determine whether, construed liberally in favor of

plaintiffs, the facts allege a violation of a clearly established

constitutional right.  Plaintiffs allege that defendants violated

their due process rights by removing the children from Fisher's

custody.  There is a broad liberty interest in keeping the family

intact, which absent other circumstances would demonstrate a

constitutional violation.  Santosky v. Kramer, 455 U.S. 745, 753

(1982).  But this interest is not absolute.  Caldwell, 928 F.2d

at 333.  "The parental interest in keeping the family unit intact

is not a clearly established right in the context of a reasonable

suspicion that the parents may be abusing children."  Baker v.

Racansky, 887 F.2d 183 (9th Cir. 1989) (citation omitted).

Rose had reasonable suspicion: she removed the children pursuant

to a valid court order, which "commanded" the children's removal

from Fisher's custody.  (Huskey Decl., Ex. A.)  The court order

15

1  contained a finding that, pursuant to California Welfare and

2  Institutions Code section 340, circumstances indicated that the

3  "[minors'] home environment endanger[ed] the health, person or

4  welfare of this minor and that continuance of the minor[s] in the

5  home of the parent(s) is contrary to the welfare of the

6  minor[s]." (Id.)  As Rose's removal of the children violated no

7  clearly established right, such, her conduct is shielded by

8  qualified immunity.

9      Plaintiffs also claim that Rose's comments during removal of

10  the children regarding the length of time they would be away from

11  their home constitute a violation of § 1983.  Even if taken in

12  the light most favorable to plaintiffs, the court cannot

13  ascertain, nor have plaintiffs identified, what constitutional

14  right Rose's statements violated.  As a result, Rose is entitled

15  to qualified immunity for making such statements during the

16  removal of the children.  Saucier, 533 U.S. at 201.

17      **2.   Post Dependency Proceeding Activity**

18      Plaintiffs allege that Fabela made threatening statements

19  following the completion of the court proceedings that violated

20  her First Amendment rights to free speech.  While defendants

21  ostensibly move to dismiss plaintiff's First Amendment claim,

22  they provide no substantive argument to support their motion as

23  to this claim.  Their entire argument addresses qualified

24  immunity with respect to violations of plaintiffs' *due process*

25  *rights* and ignores plaintiffs' *First Amendment allegation*. As a

26  result, the court must deny defendants' motion to dismiss

27  plaintiffs' § 1983 claims based on violation of Fisher's First

28

1   Amendment rights.[16]

2       **C.   Injunctive Relief Claims under § 1983**

3       Plaintiffs also request injunctive relief "undoing these

4   unreasonable and illegal conditions, and protecting them from

5   further such conditions."  (Compl. at ¶ 32.)

6       Absolute and qualified immunity are defenses to liability

7   for damages only and do not bar actions for declaratory or

8   injunctive relief.  Pulliam v. Allen, 466 U.S. 522, 539-40

9   (1984); American Fire, Theft & Collision Managers v. Gillespie,

10  932 F.2d 816, 818 (9th Cir. 1991); Shipp v. Todd, 568 F.2d 133.

11  134 (9th Cir. 1978).  See also Supreme Ct of Va v. Consumer

12  Union, Inc., 446 U.S. 719 (1980).

13      **D.   Claims against the County**

14      In addition to claims against individual defendants who are

15  county employees, plaintiffs assert Monell claims against the

16  County.  Defendants' sole argument for dismissal of plaintiffs'

17  Monell claims is that the individual defendants are immune from

18  liability.  Defendant is correct that Monell claims must be

19  predicated on conduct by an employee which has not been shielded

20  by immunity.  Saman v. Robbins, 173 F.3d 1150, 1157 (9th Cir.

21  1999).  However, this court has determined that some of the

22  individual defendants' conduct is not entitled to immunity.  See

23  supra, sections I. A. and I. B.  Additionally, the immunity

24  defenses do not apply to plaintiffs' injunctive relief claims.

25  Chaloux v. Kileen, 886 F.2d 247, 250-251 (9th Cir. 1989) (Monell

26  does not apply to prospective relief claims.)  As a result,

27  _____

28      [16]   Nothing in this order prevents defendants from filing a
    subsequent motion on this issue.

1  defendants' motion to dismiss plaintiffs' <u>Monell</u> claims against
2  the County can be granted only to the extent the claims are based
3  on conduct by defendants which is entitled to immunity.

4  **II.  State Law Claims**

5      **A.   Tort Claims**

6      Plaintiffs also bring pendant state claims for negligence
7  and intentional infliction of emotional distress based on
8  defendants' actions surrounding the children's removal.
9  Defendants contend that they are entitled to statutory and
10 discretionary immunity from liability for all state claims.

11     Under California law, public employees generally are not
12 liable for injuries caused while instituting or prosecuting
13 judicial or administrative proceedings within the scope of their
14 employment, even if they act maliciously and without probable
15 cause.  Cal. Govt. Code § 821.6.  Additionally, public employees
16 generally are not liable for acts or omissions that occur as a
17 result of their exercise of discretion, whether or not the
18 discretion was abused.  Cal Govt. Code § 820.2.

19     California courts have found that social workers are
20 absolutely immune from suits alleging the improper investigation
21 of child abuse, removal of a minor from the parental home based
22 upon suspicions of abuse, and the initiation and pursuit of
23 dependency proceedings.  <u>Alicia T. v. County of Los Angeles</u>, 222
24 Cal. App. 3d 869, 881 (1990); <u>Jenkins v. County of Orange</u>, 212
25 Cal. App. 3d 278, 284 (1989)(immunity exists for claims of
26 negligence occurring within the scope of defendant's duty under §
27 821.6).  "[T]o allow charges of prosecutorial [or investigative]
28 malfeasance to survive the pleading stage would frustrate the

18

1  compelling public need for . . . protection of endangered

2  children." Jenkins, 212 Cal. App. 3d at 288 (citation

3  omitted).

4       California has limited the immunity available to social

5  workers provided under California Government Code section 821.6,

6  where, inter alia, the social worker maliciously fails to

7  disclose exculpatory evidence. Cal. Govt. Code § 820.21.[17]

8       Defendants' investigation, removal of a minor from the

9  parental home based upon suspicions of abuse, and the initiation

10 and pursuit of dependency proceedings are all entitled to

11 immunity under California law. Alicia T., 222 Cal. App. 3d at

12 518. However, the complaint also alleges that defendants failed

13 to immediately disclose to the court that Fisher was not

14 delusional, thus delaying her reunification with her children.

15 The complaint further alleges that the defendants' conduct was

16 "wanton, *malicious*, intentional and oppressive." (Compl. at 12:2-

17 3 [emphasis added].) This alleged conduct, which the court

18 accepts as true for purposes of this motion, falls within the

19 exception to immunity for malicious failure to disclose

20

21       [17]  California Government Code section 820.21 states, in
             relevant part:

22

23       Notwithstanding any other provision of the law, the civil
         immunity of juvenile court social workers, child protection
         workers, and other public employees authorized to initiate
24       or conduct investigations or proceedings pursuant to Chapter
         2 ... shall not extend to any of the following, if committed
25       with malice: ... (3) Failure to disclose known exculpatory
         evidence  ... (b) As used in this section, "malice" means
26       conduct that is intended by the person described in
         subdivision (a) to cause injury to the plaintiff or
27       despicable conduct that is carried on by the person
         described in subdivision (a) with a willful and conscious
28       disregard of the rights or safety of others.

1   exculpatory evidence.  Cal. Govt. Code § 820.21.  As a result,

2   defendants' motion to dismiss plaintiffs' state law claims on the

3   basis of statutory immunity must be denied, but only to the

4   extent said claims are based on defendants' alleged malicious

5   failure to disclose exculpatory evidence.

6        **B.   Injunctive Relief**

7        Plaintiffs also seek "appropriate injunctive relief undoing

8   these unreasonable and illegal conditions and protecting them

9   from further such conditions."  (Compl. at ¶ 32.)  Under

10  California law, immunity only shields public entities and

11  employees from claims for monetary damages.[18]  Cal. Govt Code §

12  814; Tehachapi-Cummings County Water District v. Armstrong, 49

13  Cal. App. 3d 992, 999-1000(5th Dist. 1975).

14       **C.   State Claims against Defendant County**

15       California law imposes liability on public entities for acts

16  of their employees.  Cal. Govt Code § 815.2.[19]  However, a public

17  entity is not liable for an injury resulting from an act or

18  omission of an employee of the public entity where the employee

19  is immune from liability.  Cal. Govt Code § 815.2(b).  Thus, to

20  the extent individual defendants are entitled to statutory

21  immunity, plaintiffs cannot impose liability on the County.

22

23  ───────────────

24       [18]   Cal. Govt Code Section § 814 states: "Nothing in this
    part affects liability on contract or the right to obtain relief
    other than money or damages against a public entity or public
25  employee."

26       [19]   Cal. Govt Code § 815.2(a) states that: A public entity
    is liable for injury proximately caused by an act or omission of
27  an employee of the public entity within the scope of his
    employment if the act or omission would, apart from this section,
28  have given rise to a cause of action against that employee or his
    personal representative

                                    20

**CONCLUSION**

Based on the foregoing, the court finds as follows:

1.   Defendants' motion to dismiss plaintiffs' federal and state claims for injunctive relief is DENIED.

2.   Defendants' motion to dismiss plaintiffs' claim for damages under 42 U.S.C. § 1983 is DENIED only as to the claim based on allegedly threatening comments by defendant Fabela following completion of the court proceedings, and GRANTED with prejudice[20] in all other respects.

3.   Defendants' motion to dismiss plaintiffs' negligence and intentional infliction of emotional distress claims for monetary relief is DENIED to the extent said claims are predicated on defendants' alleged malicious failure to disclose exculpatory evidence and GRANTED with prejudice in all other respects.

4.   Defendants' motion to dismiss plaintiffs' federal and state law claims against defendant County is GRANTED with prejudice to the extent such claims are based on conduct by county employees which this court found was entitled to immunity and DENIED in all other respects.

IT IS SO ORDERED.

DATED: July 22, 2005

                                                    /s/ Frank C. Damrell Jr.
                                            FRANK C. DAMRELL, Jr.
                                            UNITED STATES DISTRICT JUDGE

---

[20]   Plaintiffs request leave to amend in the event the court grants defendants' motion to dismiss and include a list of "further allegations" they would add to the complaint.  The court has reviewed the request and concludes that the additional allegations would not alter the court's finding where it has determined that defendants' conduct is entitled to immunity.